UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| KYE HUBBARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CAFUA MANAGEMENT CO., LLC, and | ) |
| EXIT 42 DONUTS, LLC | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT AND JURY TRIAL DEMAND**

Plaintiff Kye Hubbard complains against Defendants Cafua Management, LLC and Exit 42 Donuts, LLC as follows:

**PARTIES**

1. Plaintiff Kye Hubbard ("Plaintiff") is a resident of Westbrook, County of Cumberland, Maine. He was employed as a Shift Leader at the Dunkin Donuts retail store located at 284 Payne Road in Scarborough, Maine between February 14, 2019 and January 25, 2019.

2. Defendant Cafua Management Company, LLC ("Cafua") is a privately-held Massachusetts limited liability company with a principal place of business in Methuen, Massachusetts. Cafua is the largest Dunkin Donuts franchise in the United States. It owns and operates hundreds of Dunkin Donuts franchises in seven states, including several in Maine.

3. Defendant Exit 42 Donuts, LLC is a Maine limited liability company with a principal place of business in Scarborough, Maine. On

1

information and belief, Exit 42 Donuts, LLC is wholly owned and operated by Defendant Cafua Management Company, LLC.

## JURISDICTION AND VENUE

4. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Maine Human Rights Act, 5 M.R.S. §§ 4551 *et seq.* ("MHRA"), and the Maine Whistleblowers' Protection Act, 26 M.R.S. §§ 831 *et seq.* ("MWPA").  Jurisdiction is based upon 28 U.S.C. § 1331 as the allegations raise questions of federal law.  This Court also has diversity jurisdiction under 28 U.S.C. § 1332.  Defendants are not citizens of the State of Maine, and the amount in controversy exceeds $75,000, exclusive of attorneys' fees and costs.

5. Jurisdiction is also proper because Plaintiff filed this action more than 180 days after filing a complaint of discrimination with the Maine Human Rights Commission ("MHRC") and MHRC issued Plaintiff a so-called "right to sue letter".  5 M.R.S. §§ 4612, 4621, and 4622.

6. Venue is proper in the District of Maine under 28 U.S.C. § 1391(b) (2) because a substantial part of the events or omissions giving rise to the claim occurred in Maine. Under Local Rule 3(b), this action is properly filed in Portland because the events at issue occurred in Cumberland County.

## JURY TRIAL DEMAND

7. Under Fed. R. Civ. P. 38(b), Plaintiff demands trial by jury on all issues triable to a jury.

## FACTUAL ALLEGATIONS

8. Plaintiff is a transgender man.

9. Plaintiff was employed by Defendants at the Dunkin Donuts store located at 284 Payne Road in Scarborough (the "Payne Road location") from February 14, 2018 until his employment was terminated on January 25, 2019. At all times, Plaintiff met or exceeded performance expectations.

10. On May 1, 2018, Plaintiff's manager, Brandon Avery, revealed Plaintiff's transgender status to his co-workers. Plaintiff had explicitly told his employer that he wished for his gender status to remain confidential.

11. On May 12, 2018, Plaintiff's co-workers begain harassing him based on his transgender status. They called him names like "it," "he/she" and "thing" on multiple occasions.

12. Plaintiff reported the harassment to Defendants' Multi-Unit Manager, Jim Thompson, on or about May 15, 2018. He reported to Mr. Thompson that Mr. Avery had revealed his confidential gender-status, and that he was being harassed by his co-workers.

13. Mr. Thompson told Plaintiff that he would terminate the employment of Mr. Avery and the other co-workers who harassed him.

14. Rather than terminate Avery's employment, however, Mr. Avery was transferred to another Dunkin Donuts location. The co-workers quit.

15. In mid-June of 2018, Jen Arnott took over as manager at the Payne Road location.

16. When Ms. Arnott learned of Plaintiff's transgender status, she began treating him differently. She revoked some of his Shift Leader responsibilities and excluded him from management talks in which he had formerly participated. She also changed the computer password so that Plaintiff could no longer access it.

17. At one point, Ms. Arnott hung up an employee handbook acknowledgement form for employees to sign. It listed Plaintiff's former name, "Kaitlyn," rather than "Kye." Plaintiff's co-workers all saw the form before Plaintiff had a chance to scribble out "Kaitlyn" and write "Kye."

18. Ms. Arnott also posted a customer complaint about Plaintiff. Other employees had received customer complaints, but Ms. Arnott never posted them for anyone to see.

19. Plaintiff told Ms. Arnott that he was going to report her conduct to human resources. In response, Ms. Arnott asked Plaintiff if there was anything "sexually" she could do to prevent him from reporting her.

20. Ms. Arnott also sent Plaintiff a message, calling him "sexy."

21. In mid-November of 2018, Plaintiff reported the ongoing harassment to Mr. Thompson.

22. Mr. Thompson spoke to Ms. Arnott and Plaintiff about Plaintiff's reports, but took no action. Mr. Thompson essentially instructed Plaintiff to "deal with it."

23. On January 17, 2019, Plaintiff filed a Complaint of Discrimination with MHRC about the foregoing allegations.

24. On January 22, 2019, Plaintiff told Ms. Arnott that he filed the Complaint with MHRC.

25. On January 25, 2019, Plaintiff's next scheduled shift, Defendants terminated Plaintiff's employment.

26. The sole reason given for Plaintiff's termination was that he had "vaped" in the back of the store.

27. Other employees at the Payne Road Dunkin Donuts also vaped in the back of the store, on countless occasions, and within view of the surveillance cameras.

28. Ms. Arnott allowed vaping in the back of the store as long as it was done out of the view of customers. However, only Plaintiff was disciplined for engaging in this common and accepted practice.

29. On March 8, 2019, Plaintiff amended his Complaint with MHRC, reiterating his earlier allegations, and adding claims for retaliation under the MHRA, Title VII and MWPA.

### COUNT I
### (Discrimination, Retaliation, Hostile Work Environment – MHRA, Title VII)

30. Plaintiff hereby repeats, re-alleges, and incorporates by reference the foregoing paragraphs 1-29 of this Complaint.

31. Defendants discriminated against Plaintiff with respect to the terms, conditions or privileges of his employment; unlawfully retaliated against him because he opposed discrimination and harassment; interfered, coerced, intimidated, or threatened Plaintiff while he exercised his rights to be free from discrimination or harassment; subjected him to a hostile work environment severe and pervasive enough to alter his working conditions; and terminated his employment because of his gender identity.

32. Defendants engaged in unlawful sex discrimination by treating Plaintiff in disrespectful and demeaning ways, treating him differently than it would treat similarly situated cisgendered employees, failing to properly intervene or investigate on his behalf, failing to properly train and supervise human resources and/or supervisory employees, failing to adhere to policies regarding supervision and discipline of Plaintiff, and terminating his employment based on his sex.

33. Defendants, by and through its supervisory employees, engaged in unlawful gender discrimination by treating Plaintiff in disrespectful and demeaning ways, treating him differently than it would treat similarly situated cisgender employees, failing to respect administrative and legal protocols regarding supervision and discipline of Plaintiff, failing to properly train and supervise supervisory employees, and improperly engineering the termination of Plaintiff's employment.

34.   Defendants created or permitted a hostile work environment based on Plaintiff's sex and gender-identity, and is strictly and vicariously liable for the severe, pervasive, and offensive harassment conducted by its supervisory employees because such harassment not only adversely affected the terms and conditions of Plaintiff's employment but culminated in Plaintiff's termination from employment.

35.   Defendants, by or through their supervisory employees, interfered with Plaintiff's exercise and enjoyment of the rights granted and protected by Title VII and the MHRA by, among other acts or omissions, unlawfully discriminating against Plaintiff because he opposed Ms. Arnott's unlawful and unwelcome sexual advances and comments.

36.   Defendants are liable under Title VII and the MHRA because they jointly employed Plaintiff and/or engaged in an integrated enterprise with respect to directing, controlling, and/or managing Plaintiff's employment.

37.   As a direct and proximate result of Defendants' actions set forth herein, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under Title VII and the Maine Human Rights Act:

A.   An order for Defendant to reinstate Plaintiff to his position, or front pay in lieu of reinstatement;

B.   Back pay from January 25, 2019 with prejudgment interest;

C. Compensatory damages in an amount not to exeed $500,000 including, but not limited to compensation for Plaintiff's mental anguish, financial stress, harm to reputation, loss of dignity and other tangible injuries;

D. An award of reasonable attorney's fees and all costs; and

E. All other damages to which plaintiff may be entitled, including punitive damages, to be determined by a jury.

## COUNT II
### (Whistleblower Retaliation – MWPA)

38. Plaintiff hereby repeats, re-alleges, and incorporates by reference the foregoing paragraphs 1-37 of this Complaint.

39. Plaintiff engaged in activity protected under the MWPA, to wit: Plaintiff reported to his employer what he reasonably believed to be unlawful discrimination based on his sex and gender identity; he filed a Complaint alleging unlawful discrimination with the MHRC on January 19, 2019; and he opposed on several occasions Defendants' acts and omissions, which he reasonably believed violated the MHRA.

40. As set forth above, Defendants terminated Plaintiff's employment three days after he informed his supervisor that he had filed a complaint with the MHRC.

41. As set forth above, Defendants retaliated against Plaintiff because of or in response to Plaintiff's several compliants, reports, and opposition to Defendants' discriminatory conduct.

42. Defendants are liable under the MWPA, Title VII and MHRA

because they jointly employed Plaintiff and/or engaged in an integrated enterprise with respect to directing, controlling, and/or managing Plaintiff's employment.

43. As a direct and proximate result of Defendants' actions, as set forth herein, Plaintiff suffered damages in an amount to be proved at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the Maine Whistleblowers' Protection Act:

A. An order for Defendant to reinstate Plaintiff to his position, or front pay in lieu of reinstatement;

B. Back pay from January 25, 2019 with prejudgment interest;

C. Compensatory damages in an amount not to exeed $500,000 including, but not limited to compensation for Plaintiff's mental anguish, financial stress, harm to reputation, loss of dignity and other tangible injuries;

D. An award of reasonable attorney's fees and all costs; and

E. All other damages to which plaintiff may be entitled, including punitive damages, to be determined by a jury.

Dated: July 1, 2020

Respectfully Submitted,

*/s/ James A. Clifford*
James A. Clifford

*/s/ Andrew P. Cotter*
Andrew P. Cotter
CLIFFORD & CLIFFORD, LLC
62 Portland Rd., Suite 37
Kennebunk, ME 04101
(207) 985-3200